# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JIMMIE LEE LOVELL, | ) |
|        Petitioner, | ) |
| v. | ) Case No. CIV 19-024-RAW-KEW |
| JACK THORP, | ) |
|        Respondent. | ) |

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner is a state prisoner represented by counsel who currently is under house arrest in Sequoyah County, Oklahoma. He is attacking his conviction in Sequoyah County District Court Case No. CF-2014-612 for First Degree Manslaughter, pursuant to Okla. Stat. tit. 21, § 711,[1] raising the following two grounds for relief:

    I.     The blood alcohol test results should have been suppressed.

    II.    The manslaughter conviction should have been dismissed.

Respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the Court for consideration in this matter:

---

[1] Petitioner also was convicted of Driving Under the Influence (Count 2) and was sentenced to a one-year concurrent sentence and a $1,000 fine. He was found not guilty of the Speeding charge (Count 3).

    A.      Petitioner's direct appeal brief.  (Dkt. 9-1).

    B.      The State's brief in Petitioner's direct appeal.  (Dkt. 9-2).

    C.      Petitioner's response to the State's brief.  (Dkt. 9-3).

    D.      Summary Opinion affirming Petitioner's Judgment and Sentence. *Lovell v. State*, No. F-2016-997 (Okla. Crim. App. Dec. 21, 2017) (Dkt. 9-4).

    E.      Petitioner's motion to reconsider.  (Dkt. 9-5).

    F.      Order Denying Motion to Reconsider and Directing Issuance of Mandate in Case No. F-2016-997.  (Dkt. 9-6).

    G.      Original Record, state-court transcripts, and exhibits. (Dkt. 10)

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

The State set forth the facts of the case in its brief in Petitioner's direct appeal:

> Around 7:00 p.m. on April 22, 2014, the defendant, while driving his motorcycle northbound on Highway 59 south of Sallisaw in Sequoyah County, ran his motorcycle off of the road and into the median where it crashed (Tr.

2

Vol. I, 51-56; Tr. Vol. II, 67, 72-75, 104-06, 114-16, 119-21; Tr. Vol. III, 311-13; State's Exs. 2-21). When the defendant ran off the road, his passenger, Peggy Taylor, who was not wearing a helmet, was thrown from the motorcycle (Tr. Vol. I, 51-52; Tr. Vol. II, 104-06, 114-16). An eyewitness testified he saw Ms. Taylor tumble head over heels several times striking the ground as she tumbled, before she landed on her bottom and fell over (Tr. Vol. II, 105, 111). Ms. Taylor's head, face, and legs were severely injured as a result of her repeated impact with the ground (Tr. Vol. II, 117, 131-36; Tr. Vol. III, 314). Her brain was torn from her body and her brain matter was found scattered along her path of travel along with other bodily tissue and bone fragments (Tr. Vol. II, 83-91, 131-36; Tr. Vol. III, 318-20, 343-44, 385, 390-92, 459-65; State's Exs. 12-20). One of her feet was almost severed from her body (Tr. Vol. II, 132; Tr. Vol. III, 315-16). Ms. Taylor did not survive her catastrophic injuries (Tr. Vol, II, 133-36, 201-03; Tr. Vol. III, 314-15; State's Ex. 31).[2]

The afternoon before the crash that evening, Ms. Taylor and the defendant had taken a ride on the motorcycle from their home to a bar in Ft. Smith, Arkansas (Tr. Vol. 1, 49). After drinking alcohol, the defendant drove himself and Ms. Taylor towards a casino (Tr. Vol. IV, 502-04). It is not clear whether the two went to the casino because the defendant claims to have no memory of what occurred between that time and the crash a few hours later (Tr. Vol. IV, 502-05, 519-24, 528-30).

At the time of the accident, after ejecting Ms. Taylor from the motorcycle, the defendant continued driving the motorcycle down the median until he was also thrown to the ground (Tr. Vol. I, 51-53; Tr. Vol. II, 105-06, 114-18). Passersby stopped to help and called 911 (Tr. Vol. I, 51-52; Tr. Vol. II, 105-07, 114-18).

When paramedic Ernest Perkins arrived at the scene he checked on the victim who he determined was deceased (Tr. Vol. II, 124, 128-36). He then assisted his partner, paramedic Mike Little, who was tending to the defendant (Tr. Vol. II, 136-37, 165-71). During treatment the defendant was able to communicate verbally with both paramedics and did not appear to have any

---

[2] A full autopsy was not conducted on the victim's body due to the victim's "significant lethal trauma" (Tr. Vol. II, 192-93; State's Ex. 22). The medical examiner testified she conducted only the necessary external examination. She did not x-ray the victim's body to determine the [number] of broken bones she suffered or examine her internally for injuries (Tr. Vol. II, 195-203, 208-09).

3

external injuries more serious than road rash (Tr. Vol. II, 137-40, 171-76).[3] Both paramedics testified that defendant smelled of alcohol, especially when he spoke to them (Tr. Vol. II, 141-42, 176-77). Mr. Little testified that when he asked the defendant if he had been drinking the defendant stated that he had four (4) or five (5) beers and some whiskey earlier that evening in Ft. Smith (Tr. Vol. II, 142, 177). After the defendant told Mr. Little that he had been drinking, Mr. Little called Oklahoma Highway Patrol Trooper Derek Griffey over to the ambulance to speak with the defendant (Tr. Vol. II, 145, 177; Tr. Vol. III, 318). As Trooper Griffey spoke with the defendant, he noticed an odor of alcohol and that the defendant had slurred speech (Tr. Vol. III, 321-22, 325). During their conversation the defendant told Trooper Griffey that he was driving the motorcycle and had just missed the curve and was trying to get back on the road when he crashed (Tr. Vol. III, 325-26). When Trooper Griffey asked the defendant if he had been drinking that evening, the defendant stated he had drunk a couple of beers (Tr. Vol. II, 177-78; Tr. Vol. III, 321-22). Trooper Griffey then read the "Implied Consent" form, including the portion indicating the defendant could have a sample of his blood independently tested, to the defendant and asked for his consent to withdraw the defendant's blood (Tr. Vol. III, 324, 352-54). The defendant denied consent (Tr. Vol. II, 145, 177-79; Tr. Vol. III, 324). Trooper Griffey then placed the defendant under arrest and informed him his blood would be drawn at the hospital due to the death of his passenger (Tr. Vol. II, 178-80; Tr. Vol. III, 326-27).

Trooper Griffey followed the ambulance to Sparks Hospital in Ft. Smith, Arkansas, where the defendant was taken for treatment (Tr. Vol. II, 328; Tr. Vol. III, 327-30). Once at the hospital, Trooper Griffey again went over the blood withdrawal procedure with the defendant who responded appropriately to Trooper Griffey's questions and appeared to understand what was happening (Tr. Vol. III, 330-31). Three vials of the defendant's blood were drawn by Registered Nurse David Bise (Tr. Vol. II, 295, 297-301, 304; Tr. Vol. III, 331-35; State's Ex. 30). The vials were sealed in accordance with procedure and Trooper Griffey later sent the samples to the Oklahoma State Bureau of Investigation ("OSBI") for analysis (Tr. Vol. III, 331-38; State's Ex. 32). Before leaving the hospital, Trooper Griffey made a copy of the "Blood Test Officer's Affidavit" he had filled out for purposes of drawing the

---

[3] The defendant did suffer injuries in the crash, including road rash, several broken vertebrae, and bleeding inside his skull (Tr. Vol. II, 297, 303).

4

> defendant's blood and left a copy with the defendant (Tr. Vol. III, 335-38; State's Ex. 30).
>
> OSBI forensic toxicologist and criminalist supervisor Michael Wallace later analyzed the defendant's blood (Tr. Vol. III, 411, 418-25). Mr. Wallace determined the defendant's blood alcohol content was 0.114 when his blood was drawn (Tr. Vol. III, 418-25; State's Ex. 33).
>
> Oklahoma Highway Patrol Trooper Robert Francis, an expert in accident reconstruction, analyzed the data and evidence collected from the crash scene (Tr. Vol. II, 213-14, 216-22). He estimated the defendant was traveling approximately eighty-four (84) miles per hour when he left the roadway for no external reason, *i.e.* weather or other traffic, which resulted in Ms. Taylor being ejected from the motorcycle (Tr. Vol. II, 221-59; State's Exs. 23-28).

(Dkt. 9-2 at 6-10).

**Ground I: Failure to Suppress the Blood Alcohol Test**

Petitioner alleges in Ground I of the petition that the trial court erroneously denied his motion to suppress the results of the blood test for the specimen that was drawn on April 22, 2014. He asserts he was hospitalized and was in rehabilitation for a total of three weeks but did not begin to remember what had happened for about a week after the wreck. He claims he received no paperwork or clothing when he was discharged from the hospital to rehabilitation. He also maintains he was unaware he was under investigation until he was charged in November 2014 and he first saw the Blood Test Officer's Affidavit (State's Ex. 30; Dkt. 10-10 at 45) in December 2014 when his attorney showed it to him.

Petitioner complains that pursuant to Okla. Stat. tit. 47, § 752, the State was required to retain a blood sample for independent testing for sixty (60) days. The sample was

destroyed on October 31, 2014, more than six months after the crash, but before Petitioner was arrested.[4] Because he was unaware of the blood test results until he was charged, Petitioner missed his opportunity to independently test the blood sample. The State offered no explanation for the delay in filing charges.

Petitioner argues the State could have advised him that he was a suspect before the sample was destroyed. He claims Trooper Griffey, in acknowledging Petitioner's condition, could have made additional contact at the hospital or at Petitioner's home. Also, Trooper Griffey or the district attorney could have sent a copy of the test to Petitioner to notify him that his blood alcohol level exceeded the legal limit of 0.8. Further, although the Blood Test Officer's Affidavit stated that Petitioner would be notified by the Department of Public Safety requesting his driver's license if the test exceeded the legal limit, he received no such notice and retained his license.

The trial court held a hearing on the motion, and Petitioner testified he did not recall talking with Trooper Griffey at the accident scene or at the hospital. (Mot. Hrg. I Tr. at 6; Dkt. 10-2). Petitioner further testified that when he was discharged from the hospital he did not receive his papers or his clothes. *Id.* In addition, he was not notified that he was under investigation for any criminal offense. *Id*. at 7.

---

[4] The record reflects the sample, which was taken on the night of the accident, was received by the OSBI on April 28, 2014, and tested on June 6, 2014. A report was issued on July 15, 2014. (Tr. Vol. III, 436; State's Trial Exhibits 32-33; Dkt. 10-10 at 49, 51). OSBI maintains a policy of retaining samples for at least four months from the date of receipt. (Tr. Vol. III, 438-439; State's Trial Exhibit 33; Dkt. 10-10 at 51).

Trooper Derek Griffey testified that he spoke with Petitioner at the scene of the accident, when Petitioner was in the back of an ambulance. *Id*. at 13. Griffey and Petitioner talked about the circumstances of the crash and the State's implied consent for a blood test, and Petitioner appeared to understand the conversation. *Id.* at 13, 14-15. Petitioner did not consent to a blood test, and Griffey advised him that regardless of his consent, blood would have to be taken because the accident resulted in a death. *Id*. at 13-14. The blood sample was drawn at Sparks Hospital in Ft. Smith, Arkansas. *Id*. at 14. Griffey was present when the blood was drawn, and he observed that Petitioner was conscious. *Id.*

Griffey further testified that he explained the entire Blood Test Officer's Affidavit form that was used when Petitioner's blood was drawn. Petitioner appeared to understand what Griffey said and did not seem confused. *Id*. at 15-17, 32. The form stated there would be a separate collection for independent testing. *Id*. at 15-16. Griffey left Petitioner a copy of the form in his hospital room, laying it with Petitioner's property. *Id*. at 16. On cross-examination, Griffey admitted that when Petitioner was in the ambulance, Griffey did not know the extent of Petitioner's injuries. *Id*. at 17-18.

Petitioner's hospital records were admitted, and he argued that because of his cerebral concussion and broken back, he did not remember anything about the blood test or that he could have an independent test. (Mot. Hrg. II Tr. at 8; Dkt. 10-3).

The trial court found that the timing of the blood testing and Petitioner's arrest were "uncanny," however, "there [was] no showing that the State, that the Department of Public

7

Safety or that anybody else did anything arbitrarily, or capriciously, or they did it willfully or maliciously . . . ." *Id*. at 9. The trial court further stated:

> So, with that, I'm going to deny your Motion to Suppress. I am going to allow you to talk about it all you want to in front of the jury and let them make a determination, but I'm going to also allow the State to introduce the blood test results that they do have, and allow the jury to make the determination, with reference to those, as to whether or not he was intoxicated at the time of the accident.

*Id.*

On direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) denied relief on this claim as follows:

> In Proposition I, Appellant contends the trial court erred in denying his motion to suppress the results of his blood test because he did not have the opportunity as provided in Okla. Stat. tit. 47, § 752(E) (2011), to conduct an independent analysis of the blood before it was destroyed. We review Appellant's challenge to the trial court's ruling on the motion to suppress for an abuse of discretion. *Johnson v. State*, 308 P.3d 1053, 1055 (Okla. Crim. App. 2013); *State v. Pope*, 204 P.3d 1285, 1287 (Okla. Crim. App. 2009); *Gomez v. State*, 168 P.3d 1139, 1141 (Okla. Crim. App. 2007). An abuse of discretion is any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue or "a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented." *State v. Delso*, 298 P.3d 1192, 1194 (Okla. Crim. App. 2013). In reviewing a trial court's decision suppressing evidence, we defer to the trial court's findings of fact unless they are clearly erroneous. *State v. Nelson*, 356 P.3d 1113, 1117 (Okla. Crim. App. 2015).
>
> Pursuant to Okla. Stat. tit. 47, § 752(E) (2011), when blood is withdrawn for testing of its alcohol concentration, at the request of a law enforcement officer, a sufficient quantity of the same specimen shall be obtained to enable the tested person, at his or her own option and expense, to have an independent analysis made of such specimen. The excess blood specimen shall be retained by an approved laboratory for sixty (60) days from the date of collection. In the present case, the excess blood specimen was kept

>    for approximately six months before its destruction, far beyond the statutorily required sixty (60) days. At no time during this period was any request made by the defense for a specimen to conduct an independent analysis. While Appellant claimed before the trial court and now on appeal that he had no knowledge of the blood draw or its results until after charges were filed, the trial court found these claims unsubstantiated and not sufficient to suppress the results of the blood test. We find the record and the law support this finding.
>
>    The statute clearly places the burden on the defendant to comply with each statutory condition or any independent test results are inadmissible at trial. *Foy v. State*, 533 P.2d 634, 637 (Okla. Crim. App. 1974). "The purpose of § 752(E) is to ensure that the person whose blood is drawn may obtain, upon his request and within certain time constraints, an independent analysis of his blood." *Craig v. State*, 818 P.2d 1244, 1247 (Okla. Crim. App. 1991). In *Craig*, the appellant's unsubstantiated claim of unconsciousness at the time of the blood draw was not sufficient, in light of the absence of any request for a sample for independent analysis and absent any demonstration of prejudice, to find error in the procedure employed to retain a sample of his blood. *Id.*
>
>    As Appellant did not make any request for a blood sample to be used in an independent analysis during the prescribed statutory timeframe, the trial court did not abuse its discretion in denying the motion to suppress. Further, Appellant has not shown any resulting prejudice from his alleged inability to independently test his blood sample as the trial court allowed the parties to discuss the issue at trial with the State permitted to introduce the result of the blood test and the defense allowed to question state witnesses on the blood draw, the results, and the retention of the remaining sample. Finding no abuse of discretion in the denying of the motion to suppress, the proposition is denied.

*Lovell v. State*, No. F-2016-997, slip op. at 2-5 (Okla. Crim. App. Dec. 21, 2017) (unpublished) (Dkt. 9-4).[5] The OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the

---

[5] Parallel citations in the Oklahoma Court of Criminal Appeals' opinion have been omitted throughout this Opinion and Order.

presumption. *See* 28 U.S.C. § 2254(e)(1).

Respondent alleges Ground I of the petition alleges state-law error and presents no basis for federal habeas corpus relief. The OCCA held that no relief was required, because Petitioner had failed to follow the statutory mandates, and he had demonstrated no prejudice. The circumstances of the blood draw, the results of the analysis, and the retention of the sample were all thoroughly analyzed at trial for the jury's consideration of what weight, if any, to give to the blood test analysis.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)). Thus, the question for this Court is not whether the trial court improperly admitted the blood test results into evidence at trial. Instead, the Court must determine whether Petitioner has demonstrated the admission of the evidence "was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (citations omitted). Here, the Court finds Petitioner "has failed to demonstrate the existence of a state-law error, much less a 'grossly prejudicial one." *Id*. (citations omitted).

Further, Petitioner has not asserted the OCCA's decision was contrary to, or an

unreasonable application of, specific Supreme Court law or that the decision was based on an unreasonable determination of the trial evidence. See 28 U.S.C. § 2254(d). While Petitioner cites *California v. Trombetta*, 467 U.S. 479, 485 (1984), apparently for the proposition that "criminal defendants [must] be afforded a meaningful opportunity to present a complete defense" (Dkt. 2 at 13-14), he did not rely on any Supreme Court law in asserting this claim on direct appeal (Dkt. 9-1 at 9-12). *Trombetta* held that "California's policy of not preserving breath samples *is without constitutional defect*," *Trombetta*, 467 U.S. at 488 (emphasis added), which does not support Petitioner's argument. Because Petitioner has filed to show he is entitled to habeas relief, Ground I of the petition is denied.

**Ground II:  Manslaughter Conviction**

Petitioner alleges the jury's finding of guilt on the offense of First Degree Manslaughter was not supported by the evidence or the verdict forms. Respondent asserts the OCCA's decision on this issue was not contrary to, or an unreasonable application of clearly established Supreme Court law. The OCCA held as follows:

> In Proposition II, Appellant contends that because the jury marked "guilty" on the verdict form for First Degree Manslaughter and "not guilty" on the verdict form for the lesser included offense of Negligent Homicide, the verdicts are inconsistent and his conviction for First Degree Manslaughter should be reversed. No objections were raised to the verdicts upon their return and the defense declined the court's invitation to poll the jury. As Appellant did not make a timely objection to the verdicts when they were returned, our review on appeal is for plain error. *Patterson v. State*, 906 P.2d 765, 775-776 (Okla. Crim. App. 1995). Under the test set forth in *Simpson v. State*, 876 P.2d 690, 694, 701 (Okla. Crim. App. 1994), this Court determines whether the appellant has shown an actual error, which is plain or obvious, and which affects his or her substantial rights. This Court will only correct plain error if

11

the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. *Id. See Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006). *See also Jackson v. State*, 371 P.3d 1120, 1121 (Okla. Crim. App. 2016); *Levering v. State*, 315 P.3d 392, 395 (Okla. Crim. App. 2013).

The verdict forms in this case do not warrant relief. The verdicts clearly indicate the jury found Appellant guilty of First Degree Manslaughter and not guilty of the lesser offense of Negligent Homicide. The instructions repeatedly told the jury to mark "guilty" on the verdict form if they found beyond a reasonable doubt the defendant committed the crime of First Degree Manslaughter; and if they had a reasonable doubt of the defendant's guilt or found the State had failed to prove all of the elements of the charge beyond a reasonable doubt, they should return a verdict of "not guilty" and mark the verdict form appropriately. Based upon the record in this case, we can clearly ascertain the jury's intent to find Appellant guilty of First Degree Manslaughter.

Appellant attempts to retry the case and argues the evidence supported a verdict of guilty of Negligent Homicide, not First Degree Manslaughter. A verdict is proper if it is supported by sufficient evidence. *Gray v. State*, 650 P.2d 880, 884 (Okla. Crim. App. 1982) *citing Dunn v. United States*, 284 U.S. 390 (1932). On appeal, we review the sufficiency of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. *Davis v. State*, 268 P.3d 86, 111 (Okla. Crim. App. 2011). This Court will accept all reasonable inferences and credibility choices that tend to support the verdict. *Id.*

Here, the evidence proved beyond a reasonable doubt Appellant drove his motorcycle at approximately 84 mph while intoxicated, leaving the roadway for no external reasons, *i.e.*, weather or other traffic, thus causing the death of his passenger. Appellant's conduct fell outside the realm of mere negligence and proved the commission of First Degree Manslaughter. The jury clearly did not believe his claim that he had no memory of the accident or ensuing events. Under this evidence, the jury's verdict of guilt of First Degree Manslaughter is supported by the evidence. Anything atypical in the verdict form is not error and not plain error warranting relief. This proposition is denied.

*Lovell*, slip op. at 5-7. As stated above, the OCCA's factual findings are entitled to a presumption of correctness, unless Petitioner produces clear and convincing evidence to rebut the presumption. 28 U.S.C. § 2254(e)(1).

Petitioner does not argue the OCCA's decision was contrary to, or an unreasonable determination of Supreme Court law. Instead, he appears to argue the OCCA made an unreasonable determination of the facts in light of the evidence presented at trial, *see* 28 U.S.C. § 2254(d)(2), because Petitioner was found not guilty of the lesser-included offense of Negligent Homicide (Dkt. 10-11 at 108, 112). As discussed below, the Court finds Petitioner has failed to establish his entitlement to habeas corpus relief on this claim.

There is no federal constitutional right to a consistent verdict, as long as sufficient evidence supports a conviction. *United States v. Powell*, 469 U.S. 57, 65-67 (1984) (citing *Dunn v. United States*, 284 U.S. 390, 393 (1932)). *See United States v. McCullough*, 457 F.3d 1150, 1161 n.2 (10th Cir. 2006) ("[C]onsistency in verdicts is not required because, where truly inconsistent verdicts have been reached, the most that can be said is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt." (internal quotations omitted)). Therefore, Petitioner's argument that his conviction was invalid because of inconsistent verdict forms does not present a cognizable issue in this habeas corpus action.

Further, the Supreme Court has "note[d] that a criminal defendant already is afforded

protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts," and "such review should not be confused with the problems caused by inconsistent verdicts." *Powell*, 469 U.S. at 67. Here, the OCCA independently reviewed the sufficiency of the evidence on the charge of First Degree Manslaughter. Finding the evidence sufficient, the OCCA affirmed Petitioner's conviction.

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). On federal habeas review, a claim of sufficiency of the evidence is reviewed under the standard of *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as

long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

The OCCA applies the principles of *Jackson* when a defendant challenges the sufficiency of the evidence. On direct appeal, the OCCA cited *Davis*, 268 P.3d at 111, which relies on *Spuehler v. State*, 709 P.2d 86, 111 (Okla. Crim. App. 2011), and *Jackson* as the standard and authority for claims of sufficiency of the evidence. Consistent with *Jackson*, the OCCA stated it "review[s] the sufficiency of the evidence claims in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt." *Lovell*, slip op. at 6-7 (citing *Davis*, 268 P.3d at 111). Respondent asserts the OCCA correctly identified and applied *Jackson* to affirm Petitioner's conviction for First Degree Manslaughter, therefore, no habeas corpus relief is warranted for this claim.

To the extent Petitioner is challenging the sufficiency of the evidence for his First Degree Manslaughter conviction, the Court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). The jury instruction for First

Degree Manslaughter read as follows:

> <u>Instruction No. 27</u>:
>
> No person may be convicted of manslaughter in the first degree unless the State has proved beyond a reasonable doubt each element of the crime. These elements are:
>
>> <u>First</u>, the death of a human;
>>
>> <u>Second</u>, occurring as a direct result of an act or event which happened in the commission of a misdemeanor;
>>
>> <u>Third</u>, caused by the defendant while in the commission of the misdemeanor;
>>
>> <u>Fourth</u>, the elements of Driving a Motor Vehicle While Under the Influence of Alcohol and Speeding the defendant is alleged to have been in the commission of are as follows:
>>
>> See either instruction 23 [Speeding] or 25 [Driving a Motor Vehicle While Under the Influence of Alcohol / with a blood/breath alcohol concentration of .08 or more].

(OUJI-CR-94; Dkt. 10-11 at 105).

After careful review of the record, the Court finds the evidence was sufficient under the standard of *Jackson v. Virginia*. The Court, therefore, finds the OCCA's determination that the evidence was sufficient did not constitute an unreasonable application of the *Jackson* standard, and the decision was not an unreasonable determination of the facts in light of the evidence presented at trial. This ground for habeas relief fails.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the

denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). He also has not "demonstrate[d] that reasonable jurists would find [this] court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, Petitioner should be denied a certificate of appealability.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 2) is DENIED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 8th day of May 2020.

Ronald A. White
United States District Judge
Eastern District of Oklahoma